2014-1271
(Serial No. 11/217,904)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

**IN RE JAMES E. STOLLER**
_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.
_____

**BRIEF FOR APPELLEE—DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

NATHAN K. KELLEY
Solicitor

BRIAN T. RACILLA
JAMIE L. SIMPSON
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of
the United States Patent and
Trademark Office*

May 27, 2014

# REPRESENTATIVE CLAIMS

21.     A winter turf cover for a golf green comprising:

(a)     a scrim layer secured to at least one polyolefin sheet;
(b)     the at least one polyolefin sheet being secured to on a first scrim side of the scrim sheet;
(c)     the at least one polyolefin sheet being polypropylene or polyethylene;
(d)     the scrim layer being laminated to the at least one polyolefin sheet;
(e)     the winter turf cover being water impermeable;
(f)     the at least one polyolefin sheet being a first polyolefin sheet on a first scrim side of the scrim sheet;
(g)     the at least one polyolefin sheet including a second polyolefin sheet;
(h)     the second polyolefin sheet forming part of the lightweight, compactly foldable, protective winter turf cover;
(i)     the second polyolefin sheet being laminated to a second scrim side of the scrim sheet; and
(j)     the first scrim side of the scrim sheet being oppositely disposed from the second scrim side of the scrim sheet.

JA3; JA200.

35.     In a cover for protecting a turf surface of a golf course green, the improvement comprising:

(a)     a winter turf cover being formed from at least one panel;
(b)     the at least one panel including a scrim layer;
(c)     the scrim layer being secured to a polyethylene sheet;
(d)     the scrim layer being laminated to the polyethylene sheet; and
(e)     the winter turf cover being water impermeable.

JA206.

# TABLE OF CONTENTS

I.     STATEMENT OF THE ISSUE ................................................... 1

II.    STATEMENT OF THE CASE ................................................ 1

    A.     Claimed Invention:  A Winter Turf Cover ........................... 3

    B.     The Prior Art ..................................................................... 6

        1.     Sibbet: Dual-Layer Turf Cover ................................. 6

        2.     The '088 Patent: Multi-Layer Turf Cover ............... 7

        3.     Simmons: Laminated Multi-Layer Ground Cover ................ 8

        4.     Powell: Base to Secure a Post to the Ground ........... 9

    C.     The Board Affirmed the Examiner's Rejection of the Claims .......... 9

        1.     The First Board Decision .......................................... 9

        2.     The Second Board Decision ................................. 10

III.   SUMMARY OF THE ARGUMENT ........................................ 13

IV.    ARGUMENT ...................................................................... 14

    A.     Standard of Review ........................................................ 14

    B.      The Board's Anticipation Finding Regarding Claim 35 Is Supported by Substantial Evidence ................................................... 16

    C.     The Obviousness Rejections Are Supported by Substantial Evidence and Are Correct as a Matter of Law ................................... 21

        1.     The Obviousness Rejections over Sibbet in View of the '088 Patent ......................................................... 22

        2.     The Obviousness Rejections Over Sibbet in View of the '088 Patent and Simmons ........................................ 28

3.      The Obviousness Rejections Over Sibbet in View of the '088
        Patent, Simmons, and Powel  ................................................... 30

D. Stoller's Hindsight Argument Is Unavailing .......................................... 32


V.      CONCLUSION  ........................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Am. Acad. of Sci. Tech Center, In re*, 367 F.3d 1359 (Fed. Cir. 2004) ..................18

*Bass, In re*, 314 F.3d 575 (Fed. Cir. 2002) ...............................................17

*Bigio, In re*, 381 F.3d 1320 (Fed. Cir. 2004) ...........................................19

*Bond, In re*, 910 F.2d 831 (Fed. Cir. 1990) .............................................20

*Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351 (Fed. Cir. 2008)................29

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ................................15

*Constr. Equip. Co., In re*, 665 F.3d 1254 (Fed. Cir. 2011)......................15

*Etter, In re*, 756 F.2d 852 (Fed. Cir. 1985)...............................................26

*Fulton, In re*, 391 F.3d 1195 (Fed. Cir. 2004) ..........................................24

*Gartside, In re*, 203 F.3d 1305 (Fed. Cir. 2000)................................. 15, 32

*Gurley, In re*, 27 F.3d 551 (Fed. Cir. 1994)..............................................24

*Harza, In re*, 274 F.2d 669(CCPA 1960) ........................................... 22, 23

*Hiniker Co., In re*, 150 F.3d 1362 (Fed. Cir. 1998)............................ 20, 25

*Icon Health & Fitness, In re*,
    496 F.3d 1374 (Fed. Cir. 2007)........................................................32

*Jolley, In re*, 308 F.3d 1317 (Fed. Cir. 2002) .........................................16

*Keller, In re*, 642 F.2d 413 (CCPA 1981) ........................................ 27, 31

*Kotzab, In re*, 217 F.3d 1365 (Fed. Cir. 2000) ........................................15

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007) ..................... passim

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) ........... 19, 21

*Merck & Co., In re*, 800 F.2d 1091 (Fed. Cir. 1986)...............................24

*Montgomery, In re*, 677 F.3d 1375 (Fed. Cir. 2012) ......................... 14, 17

*Morris, In re*, 127 F.3d 1048 (Fed. Cir. 1997).........................................15

*Mouttet, In re*, 686 F.3d 1322 (Fed. Cir. 2012) ................................................ 15, 26

*Mullin, In re*, 481 F.2d 1333 (CCPA 1973) ............................................................21

*Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*,
     73 F.3d 1085 (Fed. Cir. 1995) ................................................................................24

*Prater, In re*, 415 F.2d 1393 (CCPA 1969) .................................................... 20, 25

*Schreiber, In re*, 128 F.3d 1473 (Fed. Cir. 1997) ........................................... 15, 16

*Self, In re*, 671 F.2d 1344 (CCPA 1982) .................................................. 20, 25, 30

*SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351 (Fed. Cir. 2006) ................. 20, 25

*Structural Rubber Prod. Co. v. Park Rubber Co.*,
     749 F.2d 707 (Fed. Cir. 1984) ................................................................................20

*Thorner v. Sony Computer Entnm't Am. LLC*,
     669 F.3d 1362 (Fed. Cir. 2012) ...................................................................... 17, 18

*Watts, In re*, 354 F.3d 1362 (Fed. Cir. 2004) ........................................... 14, 32, 33

*Zletz, In re*, 893 F.2d 319 (Fed. Cir. 1989) .................................................. 15, 20, 25

## Statutes

35 U.S.C. § 102(b) .................................................................................. 2, 9, 10, 16

35 U.S.C. § 103(a) .................................................................................. 2, 9, 10, 21

35 U.S.C. §112, ¶2 ......................................................................................................9

## Other Authorities

MPEP § 1214.01 ......................................................................................................9

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal in connection with this case that has previously been before this Court, or that is currently pending in any other court.  The Director is also unaware of any related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

# I.  STATEMENT OF THE ISSUE

Appellant James E. Stoller ("Stoller") seeks claims to a turf cover for a golf green and improvements thereto.  The claims broadly recite one or more sheets "laminated" to a scrim sheet of the turf cover, but they contain no limitation describing the type or degree of lamination, let alone requiring the sheets to be "unitary bonded" or "fused into a unitary structure," as now argued by Stoller.  The Examiner and the Board concluded that the broadest independent claim—claim 35—is anticipated by the multi-layer turf cover of Sibbet.  The Examiner and the Board further concluded that the remaining claims would have been obvious in view of the combined teachings of Sibbet and several prior art references that also disclose multi-layer turf covers and securing mechanisms.

The questions on appeal are whether the Board reasonably construed Stoller's claims consistent with their broadest reasonable interpretation; whether substantial evidence supports the Board's findings that Stoller's claims are anticipated by, or obvious over, the prior art; and whether the prior art teaches away from Stoller's claimed invention.

# II.  STATEMENT OF THE CASE

Stoller filed the patent application at issue (serial no. 11/217,904), entitled "Reinforced, Scrim Supported, Impermeable, Protective, Winter Turf Cover," on

September 1, 2005 ("the '904 application). JA8-29.[1] After several rounds of

prosecution and an intervening appeal to the Board (JA139-148), the Examiner

rejected independent claim 35 under 35 U.S.C. § 102(b) as being anticipated by

Sibbet.[2] The Examiner rejected independent claims 21 and 28 and dependent

claim 36 under 35 U.S.C. § 103(a) as being obvious over Sibbet in view of

Stoller's own U.S. Patent No. 6,739,088 ("the '088 patent").[3] The Examiner

further rejected dependent claims 22, 29, 30, and 37 under 35 U.S.C. § 103(a) as

being obvious over Sibbet in view of the '088 patent and Simmons.[4] Lastly, the

Examiner rejected the remaining dependent claims—namely, claims 23-27 and 31-

34—under 35 U.S.C. § 103(a) as being obvious over Sibbet in view of the '088

patent, Simmons, and Powell.[5] The Patent Trial and Appeal Board ("Board")

affirmed the anticipation and obviousness rejections. JA1-7. This appeal

---

[1] References to the Joint Appendix are made by "JA___" and to Appellant's brief
by "Br. at ___."

[2] U.S. Patent Application Publication No. US 2004/0013824 A1 (published
January 22, 2004) entitled "Turf Cover Apparatus and Method." JA55-61.

[3] U.S. Patent No. 6,739,088 (issued May 25, 2004) entitled "Protective Winter Turf
Cover." JA44-54. James Stoller is the inventor of the '088 patent. To avoid any
confusion between this prior art reference and the Appellant, the Solicitor will refer
to this prior art reference as "the '088 patent."

[4] U.S. Patent No. 3,252,251 (issued May 24, 1966) entitled "Covering for a Seed or
Plant Bed." JA40-43.

[5] U.S. Patent No. 213,932 (issued April 1, 1879) entitled "Improvement in Fences."
JA38-39.

followed.

## A.    Claimed Invention:  A Winter Turf Cover

The '904 application is directed to a multi-layer turf cover that includes a scrim[6] layer.  JA11.  In describing a preferred embodiment, the specification states that the "turf cover is preferably formed from top outer layer of polyethylene and bottom outer layer of polyethylene with a reinforced scrim layer laminated or otherwise secured therebetween…."  JA12.  The specification further states that "[m]ore particularly, the scrim layer of this turf cover is secured between the two layers of polyethylene or other polyolefin by using a molten polymer to complete the laminating."  JA13; see also JA15 ("…a scrim layer 116 secured therebetween with a now solidified molten polyethylene 118.")  Nowhere does the specification describe the manner by which, or degree to which, the molten polymer is applied to the scrim layer or polyethylene sheets of the turf cover to secure them together.  However, the specification notes that an "additional insulation layer may also be inserted if desired or required."  JA13.  An embodiment of the turf cover is depicted in Figure 2, which is reproduced below.  *See* JA28.

---

[6] The specification explains that scrim typically is "an open weave fabric embedded in a resin or polymer film."  JA12.



Fig.2.

The '904 application also discloses an embodiment of the turf cover that includes a ground holding device 200 to hold the turf cover in position on the ground. JA16. As shown in Figure 4 (JA29), the ground holding device 200 has a dual-aperture washer 202 with a pair of nail apertures 206 through which nails 132 are driven at an angle such that they cross in an "X" formation 208 in the ground.

When Stoller filed the '904 application, it originally included claims 1-20 (*see* JA18-27); however, after a decision from the Board affirming the Examiner's rejections and entering a new ground of rejection (*see* JA139-148), Stoller cancelled these claims (*see* JA169) and added and subsequently amended new claims 21-37, which are the subject of this appeal. JA200-207. Independent claims 21 and 35 are directed to turf covers and improvements thereto:[7]

---

[7] The other independent claim 28 is directed to a method for making a winter turf cover. JA203-204. The Board treated claim 21 as representative (*see* JA5) and Stoller does not separately argue claim 28 from claim 21. *See* Br. at 13-15. Thus, the Director also will focus on claim 21. The Board also selected claim 22 as representative of the Examiner's obviousness rejections for claims 22, 29, 30, and 37. JA5-6. Stoller does not separately argue these claims (Br. at 16-17); thus, the Director will focus on claim 22.

21.    A winter turf cover for a golf green comprising:

(a)     a scrim layer secured to at least one polyolefin sheet;

(b)    the at least one polyolefin sheet being secured to on a first scrim side of the scrim sheet;

(c)    the at least one polyolefin sheet being polypropylene or polyethylene;

(d)    the scrim layer being laminated to the at least one polyolefin sheet;

(e)    the winter turf cover being water impermeable;

(f)    the at least one polyolefin sheet being a first polyolefin sheet on a first scrim side of the scrim sheet;

(g)    the at least one polyolefin sheet including a second polyolefin sheet;

(h)    the second polyolefin sheet forming part of the lightweight, compactly foldable, protective winter turf cover;

(i)    the second polyolefin sheet being laminated to a second scrim side of the scrim sheet; and

(j)    the first scrim side of the scrim sheet being oppositely disposed from the second scrim side of the scrim sheet.

JA3; JA200.

22.    The winter turf cover of claim 21 further comprising:

(a)    a formerly molten polyolefin bonding the first polyolefin sheet, the second polyolefin sheet and the scrim sheet together in order to form a turf cover or a green cover;

(b)    the scrim layer providing a reinforcing layer for the turf cover; and

(c)    a ground holding device being adapted to secure the winter turf cover to a desired position.

JA200-201.

35.    In a cover for protecting a turf surface of a golf course green, the improvement comprising:

(a)    a winter turf cover being formed from at least one panel;

(b)    the at least one panel including a scrim layer;

(c)    the scrim layer being secured to a polyethylene sheet;

(d)    the scrim layer being laminated to the polyethylene sheet; and

(e)    the winter turf cover being water impermeable.

JA206.

### B.     The Prior Art

### 1.  Sibbet: Dual-Layer Turf Cover

Sibbet describes a turf cover constructed from two separate covers that are fastened together.  JA55-61.  In the background section, Sibbet notes that "[a] variety of outdoor covers are used for protecting growing outdoor surfaces such as plant and seed beds [and] golf course greens…."  JA58 (¶ [0002]).  One such example of known prior art discussed by Sibbet is a cover that "includes two superimposed laminated layers," where a "first plastic layer is laminated together with a second fabric layer" and the first plastic layer can be later peeled from the second layer.  *Id.* (¶ [0006] (citing U.S. Patent No. 3,252,251 to Simmons)).

As depicted in Figure 2 (JA56) below, Sibbet discloses a turf cover 10 that is assembled from two different covers 20, 30.  JA58 (¶ [0001]).



FIG. 2

The first cover 20 is made of a high-tensile polyester mesh material and lies directly on the ground.  JA58 (¶ [0014]); JA60 (¶ [0034]).  The second cover 30 is made of a polyethylene material that is moisture resistant and is placed above the

6

first sheet facing the external environment. JA58 (¶ [0015]); JA60 (¶ [0035]). The first and second covers 20, 30 are then secured together by fastening the second cover to the first cover. JA59 (¶ [0029]); *see also id.* (¶ [0028]); JA55 (Abstract); JA58 ([¶0010] "A second cover is connected with the first cover."). Sibbet describes a preferred embodiment in which the first and second covers 20, 30 are mechanically fastened together by inserting loops 52 through grommets 32 and passing the loops through an adjacent loop. JA59 (¶ [0030]). Sibbet also states that "the present invention is not limited to the grommet and loop configuration as illustrated, as other well known structures may be employed for fastening together two planar covers…." JA60 (¶ [0032]).

Sibbet additionally teaches an insulating layer 40 disposed and secured between the first and second covers 20, 30. JA58 (¶ [0009]); JA59 (¶ [0028]). Sibbet further discloses that the turf cover apparatus 10 is secured to the ground by inserting spikes 54 into the ground through grommets 22. JA59-60 (¶ [0031]).

## 2. The '088 Patent: Multi-Layer Turf Cover

The '088 patent describes a multi-layer protective winter turf cover. JA44-54. In one embodiment depicted in Figure 11 of the reference (JA49), the turf cover is assembled with first and second polyolefin—*e.g.*, polyethylene (JA51 (col. 4, ll. 3-5))—sheets 180 that are placed respectively on either side of a foam layer 148. JA52 (col. 6, ll. 42-62). Figure 11 of the '088 patent is provided below.



### 3. Simmons: Laminated Multi-Layer Ground Cover

Simmons teaches a laminated multi-layer ground cover that may be placed over a seed or plant bed. JA40-43. Simmons discloses several known methods for laminating a plastic sheet—including one made from polyethylene, *see* JA42 (col. 3, ll. 3-5)—with a woven fabric sheet, *see id.* (col. 3, ll. 16-21), to form the multi-layer covering. Simmons notes that layers may be laminated together using heat and/or pressure (*e.g.*, mechanical means), *id.* (col. 3, ln. 53), and discusses several methods of lamination, including a hot melt process, the use of heated calendar rolls, and the use of adhesive. *Id.* (col. 3, ll. 36-42). Simmons further teaches that one who uses these methods of lamination can control the degree of adherence between laminated layers "by controlling the temperature, etc., of the plastic" used in the hot melt process or by altering "the number and pattern of the points of adherence between the film and the fabric." *Id.* (col. 3, ll. 36-40 & ll. 56-64). Additionally, Simmons discloses that the amount of adherence should allow the plastic sheet to be delaminated—*i.e.*, peeled away from the woven fabric sheet—

after the initial growing period, leaving the fabric sheet over the seed or plant bed until the plants are ready for transplanting.  *Id.* (col. 4, ll. 27-40).

### 4.  Powell: Base to Secure a Post to the Ground

Powell describes a base used to secure a fence post to the ground by inserting pins into the ground through a pair of angled openings in the base.  JA38-39.  As shown in Figure 1 of Powell, the openings are angled so that the inserted pins D are positioned in an "X" formation.  JA38.



### C.    The Board Affirmed the Examiner's Rejection of the Claims

### 1.  The First Board Decision

Stoller originally filed the '904 application with claims 1-20, which he amended during the examination of the application.  The Examiner finally rejected the amended claims under 35 U.S.C. §§ 102(b)  and 103(a) in view of the references discussed above.  JA141.  Stoller appealed these final rejections to the Board, and the Board affirmed the rejections and entered new grounds of rejection based on indefiniteness under 35 U.S.C. §112, ¶2.  JA141-143.[8]  In response to the

---

[8] As the Examiner noted in her Advisory Action (JA82-85), given the overlap in Stoller's arguments, certain findings by the Board in the first decision apply to the claims addressed in the second decision.  JA84 (citing MPEP § 1214.01).

new grounds of rejection, Stoller reopened prosecution, cancelled claims 1-20, and

presented new claims 21-37 which were a "reworking" of cancelled claims 1-20.

JA161. Thereafter, the Examiner issued a final rejection of claims 21-37. JA30-

37.

### 2. The Second Board Decision

Stoller appealed to the Board from the Examiner's final rejection of claim 35

under 35 U.S.C. § 102(b) and claims 21-34 and 36-37 under 35 U.S.C. § 103(a).

The Board affirmed the Examiner's rejections. JA3; JA7.

First, the Board addressed the anticipation rejection of claim 35. The

Examiner found that Sibbet teaches all of the limitations in claim 35. JA120. The

Board rejected Stoller's argument that Sibbet cannot anticipate claim 35 because

Sibbet fails to teach a "unitary bonded cover" with "layers []fused into a unitary

structure by the claimed molten bond…." JA4. In particular, the Board concluded

that Stoller's argument must fail because claim 35 does not recite these limitations.

*Id.* The Board then rejected Stoller's argument that the claim term "laminated"

should be construed narrowly and limited to the use of molten polymer because

Stoller had failed to expressly define the term "laminated" as such in his

specification and because the Board should not import limitations into a claim

during examination. JA4-5. The Board also noted that the pressing force from the

mechanical fastening taught in Sibbet would still meet the definition of

"laminated" proffered by Stoller in his appeal brief (JA190)—namely, "made by pressing together thin layers of material"—and that Stoller had failed to demonstrate otherwise. JA5.

Next, the Board addressed the obviousness rejections of claims 21, 28, and 36 as unpatentable over Sibbet and the '088 patent. The Examiner found that Sibbet discloses all of the limitations of these claims except a second polyolefin sheet oppositely disposed from the first scrim side of the scrim sheet. JA121-122. The Examiner found that the '088 patent teaches the claimed second polyolefin sheet and that it would have been obvious to modify the teachings of Sibbet with the teachings of the '088 patent to improve stability of the turf cover. JA122. The Board rejected Stoller's argument that the '088 patent teaches away from the claimed invention because the '088 patent fails to disclose a scrim layer (which is already disclosed in Sibbet). JA5. In particular, the Board concluded that Stoller's teaching away argument was unavailing because Sibbet did not criticize the use of a second polyolefin sheet as recited in the claim and disclosed in the '088 patent. *Id.* The Board also rejected Stoller's arguments that there would have been no motivation to combine Sibbet and the '088 patent because (1) Sibbet failed to suggest modifying its turf cover with a second polyolefin sheet, (2) the proposed combination would destroy some essential element of Sibbet, and (3) Sibbet

11

teaches the use of something absent from the invention disclosed in the '904

application—*viz.* an insulating layer of straw.  *Id.*

The Board next addressed the obviousness rejections of claims 22, 29, 30,

and 37 as being unpatentable over Sibbet, the '088 patent, and Simmons.  The

Examiner found that Simmons teaches that the use of molten polyolefin to

laminate a first layer to a scrim layer to form a ground cover was old and well

known and that it would have been obvious to a skilled artisan at the time of

Stoller's invention to modify the teachings of Sibbet with Simmons as merely an

engineering design choice of a known fabrication process.  JA122-123.  The Board

agreed and rejected Stoller's argument that the obviousness rejections should be

reversed because none of the references showed a "formerly molten polyolefin

bond used to join two polyolefin sheets together with a scrim layer sandwiched

therebetween."  JA6.  Specifically, the Board rejected Stoller's argument because

the test for obviousness focuses on the combined teachings of the references and

not whether any single reference expressly suggests the claimed subject matter.  *Id.*

Lastly, the Board addressed the remaining obviousness rejections of

dependent claims 23-27 and 31-34 as being unpatentable over Sibbet, the '088

patent, Simmons, and Powell.  The Examiner found that both Sibbet and the '088

patent teach slide washers.  JA123.  The Examiner further found that Powell

teaches that the use of two apertures to receive nails that, when inserted, cross

12

underground to secure an item to the ground was old and well known and that it would have been obvious to a skilled artisan at the time of Stoller's invention to modify the teachings of Sibbet with Powell because it was merely the application of a known technique to a known device to yield predictable results. JA123. Stoller argued that the obviousness rejections in view of Powell could not stand because Powell does not teach the claim limitations allegedly missing from the other references; the Board rejected this argument because it had found all of the other limitations present in the prior art references. JA7.

### III.  SUMMARY OF THE ARGUMENT

Sibbet teaches a turf cover that includes all of the limitations of claim 35. The remaining prior art references provide the limitations present in the remaining claims—including the use of a second plastic layer located on the other side of the scrim sheet, the use of a molten polyolefin bond to laminate the sheets together, and the use of apertures to angle stakes into the ground to hold the cover on the ground. Stoller attempts to avoid the teachings of these references by urging a narrow construction of the claim term "laminated." But, this term must be construed consistent with its broader, ordinary meaning, because, as the Board found, Stoller did not give the term a distinct, narrower definition in his specification. Thus, Stoller did not meet the exacting standards for finding that he acted as his own lexicographer or made a disavowal to give this term a narrower

meaning. Moreover, Stoller's narrow construction is tantamount to improperly importing limitations into the claim from the specification. Under its reasonable interpretation, the Board properly found that Sibbet anticipates claim 35 because it teaches each of the limitations.

Similarly, Stoller's arguments against the obviousness rejections must fail because, at bottom, they are based on positions that have been previously rejected by this Court – including, relying on limitations that do not appear in the claims, reading prior art references in isolation rather than in combination, and requiring an express suggestion of the claimed invention to combine the teachings of the references. Stoller also has failed to show that any of the references teach away from his claimed invention, because he has failed to show any criticism, discrediting, or discouragement of the claimed invention – the mere absence of a claim limitation from one of the obviousness references (when that limitation is disclosed in other ones) does not suffice.

## IV.  ARGUMENT

### A.    Standard of Review

Stoller has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). During examination, claims are given their broadest reasonable interpretation consistent with the specification. *In re Montgomery*, 677 F.3d 1375, 1379 (Fed. Cir. 2012). This Court reviews the

USPTO's interpretation of disputed claim language to determine whether it is reasonable. *In re Morris*, 127 F.3d 1048, 1054-55 (Fed. Cir. 1997); *In re Zletz*, 893 F.2d 319, 321-22 (Fed. Cir. 1989).

Anticipation is a question of fact. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). Obviousness is a question of law based on underlying findings of fact. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). This Court reviews the Board's legal conclusion of obviousness *de novo*, but must uphold the Board's underlying fact findings in an obviousness analysis if they are supported by substantial evidence. *Id.* "The determination of what a reference teaches is one of fact, as is the existence of a reason for a person of ordinary skill to combine references." *In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011). "Whether or not a reference teaches away from a claimed invention is a question of fact." *In re Mouttet*, 686 F.3d 1322, 1333 (Fed. Cir. 2012).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion reached. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It is "something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). For example, "where two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that

must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

### B.    The Board's Anticipation Finding Regarding Claim 35 Is Supported by Substantial Evidence

A prior art reference anticipates a patent claim when the reference expressly or inherently discloses all of the limitations of the patent claim. *Schreiber*, 128 F.3d at 1477. The Examiner found that Sibbet teaches all of the limitations in claim 35, including the "being laminated" limitation, and rejected the claim under 35 U.S.C. § 102(b).[9] JA120. The Board confirmed that Sibbet teaches all the limitations, including the "being laminated" limitation. The Board found that "laminated" was disclosed by the teachings in Sibbet that the looped ropes 52 can be used to connect the first and second covers 20, 30 along the edges of turf cover 10. JA143-144 (citing JA59 (¶¶ [0029]-[0030])).

The Board reasonably construed the claim term "laminated" using its ordinary meaning to "simply describe a structure formed from several layers." JA144 n.1 (citing the definition of "laminate" in THE AMERICAN HERITAGE® DICTIONARY OF THE ENGLISH LANGUAGE (2007), *available at*

---

[9] Stoller notes that claims 21 and 26 may also stand rejected under 35 U.S.C. § 102(b); however, the Examiner's final rejection (JA33 ("Claim 35 is rejected under 35 U.S.C. 102(b)…")), the Examiner's Advisory Action (JA84 (same)), the Examiner's Answer (JA118 (same)), and the Board decision (JA3 (same)) all state that claim 35 is the only claim rejected as anticipated under 35 U.S.C. § 102(b).

http://www.credoreference.com/entry/hmdictenglang/laminate). *Montgomery*, 677

F.3d at 1379. The Board concluded that it need not deviate from the term's

ordinary meaning because the applicant did not expressly define the term

"laminated" otherwise. JA4; *see In re Bass*, 314 F.3d 575, 577 (Fed. Cir. 2002)

(stating the USPTO must give words in a claim their ordinary meaning unless

applicant included an inconsistent definition for that term in the specification).

　　　In response, Stoller argues that Sibbet cannot anticipate claim 35 of the '904

application because Sibbet does not disclose "laminated" as claimed and defined in

his application – *viz.*, polyolefin and scrim layers that "are fused (by **lamination**)

into a unitary structure, i.e., a single layer cover (JA64), by a molten bond used to

hold appellant's layers together (JA65)." Br. at 11. However, Stoller's argument

fails for several reasons. Stoller argues first that his specification provides "an

implicit definition for the term 'laminated'" because of its consistent use in the

specification. Br. at 8-9, 11. But, such an implicit definition will not suffice. If an

applicant wishes to act as his own lexicographer, the applicant must "clearly set

forth a definition of the disputed claim term" and "clearly express an intent to

define the term." *Thorner v. Sony Computer Entnm't Am. LLC*, 669 F.3d 1362,

1365 (Fed. Cir. 2012). Stoller provided no such definition in his specification, as

the Board properly found. JA4.

Indeed, the term "laminated" (or the like) appears in the text of specification only four times. In three of these instances, the term is used simply as a general descriptor regarding the scrim layer. *See* JA11 ("…with a scrim layer laminated therebetween,…"); JA12 ("…with a reinforced scrim layer laminated or other secured therebetween,…"); JA15 ("The laminated structure of the scrim layer supported winter turf cover…"). These brief mentions of the term do not express any intent to give "laminated" a definition other than its ordinary meaning. The other instance of the term in the specification appears as part of the discussion of the scrim layer in a preferred embodiment: "More particularly, the scrim layer of this turf cover is secured between the two layers of polyethylene or other polyolefin by using a molten polymer to complete the laminating…." JA13. Similarly, this brief recitation regarding the completion of laminating is not a clear expression of any intent to narrowly define the term, as is required by this Court's precedent. *See, e.g.*, *Thorner*, 669 F.3d at 1365.

Moreover, during examination, consistent use of a claim term in the specification will not support reading limitations into a claim without a clear disavowal of the term's broader, ordinary meaning. *See In re Am. Acad. of Sci. Tech Center*, 367 F.3d 1359, 1369-70 (Fed. Cir. 2004) ("We have cautioned against reading limitations into a claim from the preferred embodiment described in the specification, even if it is the only embodiment described, absent clear

disclaimer in the specification." (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)); *see also In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004) (noting that the USPTO should only limit a claim when specification or prosecution history expressly disclaims the broader definition). Here, there is no express disclaimer of the broader, ordinary definition of "laminate" used by the Board; thus, Stoller's citations to the specification are of no moment.[10]

Next, Stoller tries to distinguish Sibbet from claim 35 by arguing that Sibbet fails to disclose layers that are fused into a unitary structure by a molten bond. Br. at 11. However, these features are not used in any way in the specification to limit the claims; indeed, neither the term "fused" nor "unitary structure" even appears in the specification. *See generally* JA8-18. Stoller criticizes Sibbet for failing to disclose a permanent bond (*i.e.*, Sibbet teaches to "**releasably** join the edges"), a molten bond, and lamination of sheets "into a single layer." Br. at 11. *Ab initio*, Stoller's attempt to distinguish Sibbet in this way is unavailing because, as the Board concluded, these elements are not present in claim 35. JA4-5, 6. Instead, Claim 35 broadly claims a turf cover with a scrim layer laminated to a polyethylene sheet. *See* JA206. Thus, under the plain language of claim 35, the

---

[10] Indeed, it appears that under Stoller's own definition of "laminated," which includes "pressing together" layers—*see* Br. at 11; *see also* Br. at 8 ("...fused, bonded, adhered or pressed together…")—that the pressing force provided by the grommet and loop configuration taught in Sibbet would satisfy the "laminated" limitation of claim 35, as noted by the Board. JA5.

Board correctly found that Sibbet anticipates. *In re Self*, 671 F.2d 1344, 1348 (CCPA 1982) ("Many of applicant's arguments fail from the outset because…they are not based on limitations appearing in the claims."); *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998) (stating "the name of the game is the claim") (citation and internal quotation marks omitted).  Indeed, the Board would have committed reversible error if it had read such limitations into the claim.  *See, e.g.*, *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006) (holding it is error to narrow claim by reading limitation into the claim); *In re Zletz*, 893 F.2d 319, 322 (Fed. Cir. 1989) (cautioning against reading unclaimed limitations into the claim); *In re Prater*, 415 F.2d 1393, 1405 (CCPA 1969) (noting that limitations should not be read into a claim while the claim is pending before the USPTO).[11]

Even if any of the missing limitations can be read into claim 35, each of Stoller's criticisms of Sibbet is fatally flawed on its own.  First, as taught in Sibbet, the ordinary meaning of "laminated" encompasses sheets that can be later peeled apart—*i.e.*, releasably joined.  *See* JA58 (¶ [0006] ("The first layer of the cover is

---

[11] Stoller's argument that Sibbet does not anticipate because "it does not identically disclose" the limitations recited in the claimed invention, *see* Br. at 12, is an extension of his argument that the claim term "laminated" should be read more narrowly than the Board did, and it fails for the same reasons explained above. Stoller's citations to *In re Bond*, 910 F.2d 831 (Fed. Cir. 1990) and *Structural Rubber Prod. Co. v. Park Rubber Co.*, 749 F.2d 707 (Fed. Cir. 1984) are misplaced because, unlike *Bond*, there are no means-plus-function limitations at issue, and, unlike *Structural Rubber*, the Examiner and Board found all of the limitations of claim 35 present in the turf cover disclosed in Sibbet.

peelable…. The fabric layer after being delaminated allows….")).  Second, the

claim term "laminated" is broader than just molten bonds, and this is confirmed by

Stoller's own dependent claims.  For example, dependent claim 37 recites "a

formerly molten polyolefin bonding" the claimed sheets together.  JA207.  Because

claim 35 is independent, it should be construed to be broader than its dependent

claim; thus, it would be error to limit the lamination recited in claim 35 to only a

molten bond.  *Liebel-Flarsheim*, 358 F.3d at 909.  Third, although Sibbet teaches

the use of an insulating layer of straw between the scrim and top layers of the turf

cover, the Board also found that Sibbet discloses that the straw can be removed and

discarded from the turf cover, *see* JA144-145 (citing JA60 (¶ [0037]); thus, the

later addition of an insulating layer does not negate anticipation by the disclosed

turf cover without the insulating layer.  JA145 (citing *In re Mullin*, 481 F.2d 1333,

1335-36 (CCPA 1973)).

### C.    The Obviousness Rejections Are Supported by Substantial Evidence and Are Correct as a Matter of Law.

A claimed invention is unpatentable if the differences between it and the

prior art "are such that the subject matter as a whole would have been obvious at

the time the invention was made to a person having ordinary skill in the art."  35

U.S.C. § 103(a).

1.    **The Obviousness Rejections over Sibbet in View of the '088 Patent**

The Board affirmed the Examiner's rejection of claims 21, 28, and 36 of the '904 application as obvious based on the combination of Sibbet in view of the '088 patent. JA7; JA119. The Examiner found that Sibbet expressly disclosed all of the limitations of these claims with the exception of the second polyolefin sheet located on the other side of the scrim sheet, which was opposite from the side on which the first polyolefin sheet was laminated. JA121-122. The Examiner found that the '088 patent teaches a turf cover that has a second polyolefin sheet oppositely disposed from the first scrim side of the scrim sheet—*i.e.*, sheets on either side of middle sheet. JA122. The Examiner also found that it would have been obvious to one of ordinary skill in the art to add a second polyolefin sheet as claimed "to provide more stability to the cover" and that this modification was "merely the duplication of a known element for a multiple effect [*In re Harza*, 274 F.2d 669, 671 (CCPA 1960)] and the use of a known technique to improve a similar device in the same way." *Id.*

The Board's findings with regard to the combination of Sibbet and the '088 patent are consistent with the Examiner's. The Board first found that the '088 patent "demonstrates that sandwiching with two polyethylene sheets was a technique that was known in the art." JA145. The Board also agreed with the Examiner that adding a second polyolefin sheet (as taught by the '088 patent) to

22

the turf cover disclosed by Sibbet would have been obvious to a skilled artisan because it "would predictably provide increased chemical and moisture resistance in order to further protect the ground surface being covered." JA146 (citing JA60 (¶ [0035]). Thus, the Board correctly concluded that the addition of a second polyolefin sheet to the turf cover as recited in these claims would have been obvious. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 417 (2007) ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."); *Harza*, 274 F.2d at 671 (holding that the duplication of elements is not patentable unless a new or unexpected result is produced).

Stoller raises three related challenges to the Board's obviousness rejections. First, Stoller argues that the references teach away from his claimed invention. Br. at 13-15. Second, Stoller argues that Sibbet fails to provide a motivation to combine with the '088 patent. Br. at 13. Third, Stoller argues that the proposed combination of Sibbet and the '088 patent creates an "unworkable, improbable" combination that still lacks the scrim sheet limitation. Br. at 14. Each of these arguments fails.

Stoller argues that both the '088 patent and Sibbet teach away from the claimed invention. Br. at 13-15. However, the disclosures of these references fall

23

well short of teaching away from the claimed invention. "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994). Stoller first argues that the '088 patent teaches away from the claimed invention because there is no reinforcing scrim layer disclosed in the '088 patent. Br. at 13. However, as an initial matter, the scrim sheet is taught in Sibbet, not the '088 patent; thus, its absence from the '088 patent does not prevent the combination of Sibbet and the '088 patent from rendering the claims obvious. *See In re Merck & Co.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986) (explaining that a prior art reference "must be read, not in isolation, but for what it fairly teaches in combination with the prior art as a whole."). Moreover, the '088 patent does not state that a scrim sheet "should not" or "cannot" be placed between the polyolefin sheets of the disclosed turf cover. *Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1090 (Fed. Cir. 1995). Nor does it "criticize, discredit, or otherwise discourage" the placement of a scrim sheet between the polyolefin sheets. *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004). Thus, the disclosure of the '088 patent does not teach away from the invention.

Next, Stoller argues that the Sibbet reference teaches away from the claimed invention because Sibbet (1) discloses the use of loops that only press the first and

second covers together along the edges of turf cover, which is "very distinct" from

the molten layer bonding that is "clearly and completely bonded throughout the

sheet," Br. at 15, and (2) teaches the use of an insulating layer of straw that is

"completely absent from appellant's teaching of a laminated unitary structure," Br.

at 14.  Stoller's arguments are unavailing because, as noted above, the "unitary

structure" and "complete bond" limitations simply are not recited in these claims;

thus, they cannot be used to distinguish over the prior art.  *See, e.g.*, *Self*, 671 F.2d

at 1348; *Hiniker*, 150 F.3d at 1362.  Further, Stoller's claims do not recite or

require any particular lamination layout or design, and it is improper to graft such

limitations onto the claims now.[12]  *SRAM Corp.*, 465 F.3d at 1359; *Zletz*, 893 F.2d

at 322; *Prater*, 415 F.2d at 1405.

Without further elaboration, Stoller also criticizes Sibbet because it discloses

an insulating straw layer that is "contrary to" and "completely absent" from

appellant's structure.  Br. at 14.  While Sibbet discloses a preferred embodiment

that includes the use of straw as an insulating layer (*see* JA58, ¶¶ [0010], [0016]),

it also teaches that the straw can be removed and discarded.  *See* JA60, ¶ [0037];

---

[12] Simmons, which is discussed in the background section of Sibbet (JA58 (¶ [0006])), confirms that the ordinary meaning of "laminated" can include many different patterns and layouts.  JA42, col. 3, ll. 56-64 ("…control the peeling force by reducing the number and pattern of the points of adherence between the film and the fabric.").  As noted above, Stoller did not act as his own lexicographer or disavow the ordinary meaning of the term "laminated" to support a narrower construction in his claims.

JA144-145.  To the extent Stoller is arguing that a reason to combine exists only if a skilled artisan would have combined the exact turf cover of Sibbet—*i.e.*¸ a cover including an insulating layer of straw between the scrim and first polyolefin sheets—with the second polyolefin sheet disclosed in the '088 patent to arrive at his claimed invention, Stoller misstates the obviousness inquiry.  The obviousness analysis is broader than that, and takes into account the teachings of the prior art as a whole in view of the common sense and creativity of the person of ordinary skill in the art.  *KSR*, 550 U.S. at 419-421.  Further, "a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements."  *Mouttet*, 686 F.3d at 1332; *see also In re Etter*, 756 F.2d 852, 859 (Fed. Cir. 1985) (en banc) (explaining that the relevant inquiry is "not whether the references could be physically combined but whether the claimed inventions are rendered obvious by the teachings of the prior art as a whole").

Next, Stoller argues that Sibbet fails to provide a motivation to combine with the '088 patent.  Br. at 13.  This argument improperly narrows the obviousness inquiry, and, to the extent it seeks to require an express suggestion to combine the teachings of the references, has been rejected by the courts.  *KSR*, 550 US at 419 ("The obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents.").  Contrary to

Stoller's argument, a determination of obviousness does not require the claimed invention to be expressly suggested by any one or all of the references. *See In re Keller*, 642 F.2d 413, 425 (CCPA 1981). Here, the Examiner explained that a skilled artisan would be motivated to combine Sibbet and the '088 patent to provide more stability to the cover and that the skilled artisan would know how to do so by adding another polyolefin sheet because it was merely the duplication of a known element. JA122. Stoller does not challenge either of those findings.

Stoller also argues that combining Sibbet and the '088 patent to add a sheet from Sibbet to the turf cover of the '088 patent would: "destroy[] the teaching of Sibbet;" still lack the claimed scrim layer; and be "an unworkable, improbable combination." Br. at 14. These arguments misapprehend and invert the obviousness rejection that the Examiner made. The Examiner did not suggest adding the polyethylene sheet from Sibbet to the turf cover of the '088 patent; rather, the Examiner found that it would have been obvious to a skilled artisan to modify Sibbet[13] (which has a scrim sheet) by adding a second polyolefin sheet on the side of the scrim sheet opposite from where the first polyolefin sheet is attached. JA122; JA145. This combination includes the claimed scrim layer, does

---

[13] Indeed, in response to this argument before the Board, the Examiner reiterated that Sibbet was the primary reference in the obviousness rejections. JA124.

not "destroy" any teaching of Sibbet, and is not "unworkable" or "improbable," *see KSR*, 550 U.S. at 417.

### 2. The Obviousness Rejections Over Sibbet in View of the '088 Patent and Simmons

The Board affirmed the Examiner's rejection of claims 22, 29, 30, and 37 of the '904 application as obvious based on the combination of Sibbet in view of the '088 patent and Simmons.  JA4, JA7; JA119.  The Examiner found that Sibbet and the '088 patent expressly disclosed all of the limitations of these claims except a "formerly molten polyolefin first and second sheet bonding with the scrim" layer.  JA122.  The Examiner found that Simmons discloses that it was "old and notoriously well-known fabrication practice to use molten polyolefin to laminate with a scrim layer for forming a cover."  *Id.* (citing JA42, col. 3, ll. 33-44 (describing lamination by, *inter alia*, a hot melt process)).  The Examiner also found that it would have been obvious to one of ordinary skill in the art at the time of the invention to modify the teachings of Sibbet to use the molten polyolefin lamination taught in Simmons because it would have been "merely an engineering design choice" to select a known fabrication process used for other lightweight ground covers, such as that taught by Simmons, and because it was "the application of a known technique to a known device ready for improvement to yield predictable results."  JA122-123.  The Board agreed with and adopted the Examiner's conclusions regarding the hot-melt lamination process disclosed in

Simmons, and the Board correctly concluded that the claims were obvious in view of the combined teachings of Sibbet, the '088 patent, and Simmons.  JA6; *see KSR*, 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.").

Stoller challenges two aspects of the obviousness rejections.  First, Stoller argues that the combination of references cannot support an obviousness rejection because "[n]ot a single reference shows appellant's formerly molten polyolefin bond used to join two polyolefin sheets together through lamination (JA64) with a scrim layer sandwiched therebetween (JA64)."  Br. at 16.  Stoller's argument again misapprehends the obviousness inquiry.  If any of the references had all of the limitations present, then the reference would be anticipatory, and there would be no need for an obviousness analysis.  *See Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) ("Obviousness can be proven by combining existing prior art references, while anticipation requires all elements of a claim to be disclosed within a single reference.").  Because neither Sibbet nor the '088 patent discloses the type of lamination using a formerly molten polyolefin bond, the Examiner found another reference—*i.e.*, Simmons—that teaches this type of lamination and correctly explained that the claims would have been obvious in view of the prior art as a whole.  JA121-123.

29

Second, Stoller argues that Simmons does not teach the "formerly molten polyolefin bonding" limitation because Simmons discloses a degree of lamination that allows the laminated layers to be later peeled apart.  Br. at 17.  Stoller contends that his claimed invention requires the layers to be "firmly and permanently laminate[d] together.  *Id.*  However, as the Board observed (JA6), Stoller's claims do not recite or require any degree of lamination, and purported limitations that do not appear in the claims cannot be relied upon to demonstrate patentability over the prior art.  *Self*, 671 F.2d at 1348.  Moreover, Simmons' disclosure demonstrates it was well known that the degree of adherence may be altered, *e.g.*, by controlling the temperature of the molten plastic (JA42, col. 3, ll. 33-44); thus, the ordinary meaning of "laminated" encompasses both permanent and peelable levels of adherence, and as shown above, Stoller did not define or otherwise disclaim the ordinary meaning of the term "laminated."  *See* Section IV(B), *supra*.

### 3.  The Obviousness Rejections Over Sibbet in View of the '088 Patent, Simmons, and Powell

The Board affirmed the Examiner's rejection of remaining claims 23-27 and 31-34 of the '904 application as obvious based on the combination of Sibbet in view of the '088 patent, Simmons, and Powell.  JA4, JA7; JA119.  The Examiner found Sibbet, the '088 patent, and Simmons collectively teach all of the limitations of these claims except a washer having two apertures that each receive and direct a

30

nail into the ground such that the nails cross underground. JA123.[14] The Examiner found that Powell teaches that it was well known at the time of the invention to secure an item to the ground by providing two apertures in a washer that receive nails which cross underground. *Id.* (citing JA38 (Fig. 1, elements C & D, and Fig. 2, element A)). The Examiner further found that it would have been obvious to a skilled artisan to modify Sibbet with the teachings of Powell at the time of the invention because the modification "is merely the application of a known technique to a known device ready for improvement to yield predictable results to prevent undesired displacement" of the turf cover. *Id.*; *see KSR*, 550 U.S. at 416.

Stoller argues that Powell is improperly combined with the other references because "[t]here is no teaching to use the hold down structure of Powell (JA38-40) [*sic*] with Appellant's structure." Br. at 18. As shown above, this argument improperly narrows the obviousness inquiry, and, to the extent it seeks to require an express suggestion to combine the teachings of the references, has been rejected by the courts. *KSR*, 550 US at 419; *Keller*, 642 F.2d at 425. Moreover, to the extent that Stoller's argument may be cast as a non-analogous art argument, it fails because prior art directed to the same problem to be solved (here, holding an object to the ground)—even if in a different field than the invention (here, fence posts)—

---

[14] The Examiner also found that Sibbet as modified by the '088 patent teaches a turf cover with a slide washer as recited in claims 25, 27, and 33. JA123 (citing grommet 22 of Sibbet and the slide washer 126 of the '088 patent).

is considered to be analogous.  *See In re Icon Health & Fitness*, 496 F.3d 1374,

1380-81 (Fed. Cir. 2007) (explaining that prior art may serve as analogous art, if it

is "reasonably pertinent to the problem addressed by" the invention).

Lastly, Stoller argues that the combination of the other prior art references

with Powell is inadequate because Powell does not provide the claim limitations

that are allegedly missing from the other prior art references.  Br. at 18.  However,

as demonstrated above, Sibbet, the '088 patent, and Simmons disclose all of the

allegedly missing limitations.  *See* Sections C(1) and (2) *supra*.  Thus, Appellant's

argument similarly must fail.  Having failed to present any evidence to the Board

to rebut the Board's *prima facie* showing of obviousness, Stoller has not shown

any error in the Board's decision.  *See, e.g.*, *Watts*, 354 F.3d at 1369.

### D.    Stoller's Hindsight Argument Is Unavailing.

Stoller also argues generally that the Examiner's obviousness determinations

are impermissible because they are based on hindsight.  Br. at 19.  However,

Stoller fails to show how the Examiner purportedly used Stoller's claims as a

"blueprint."  *Id.*  To the contrary, the Examiner provided cogent rationales for why

a skilled artisan, at the time of the invention, would have combined the teachings

of the prior art references for each of the obviousness rejections, and the Board

affirmed them.  JA7.  In light of the motivations to combine offered by the

Examiner, Stoller's general allegation of hindsight cannot prevail.  *Gartside*, 203

F.3d at 1319 (holding a conclusion of obviousness is not based on hindsight where

there is a teaching or motivation to combine prior art references).  Thus, Stoller has

not shown any error in the Board's decision.  *See, e.g.*, *Watts*, 354 F.3d at 1369.

## V.   CONCLUSION

For the foregoing reasons, the Board's decisions should be affirmed.

Respectfully submitted,

May 27, 2014

/s/ BRIAN T. RACILLA
NATHAN K. KELLEY
Acting Solicitor

BRIAN T. RACILLA
JAMIE L. SIMPSON
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313

*Attorneys for the Director of the*
*United States Patent and*
*Trademark Office*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2014, I electronically filed the foregoing

BRIEF FOR APPELLEE—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK

OFFICE with the Court's CM/ECF filing system, which constitutes service,

pursuant to Fed. R. App. P. 25(c)(2), Fed. Cir. R. 25(a), and the Court's

Administrative Order Regarding Electronic Case Filing 6(A) (May 17, 2012).


       /S/ BRIAN T. RACILLA

BRIAN T. RACILLA
Associate Solicitor
United States Patent & Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450

## <u>RULE 32(a)(7)(C) CERTIFICATE OF COMPLIANCE</u>

I certify pursuant to FRAP 32(a)(7) that the foregoing brief complies with the type-volume limitation.  The total number of words in the foregoing brief, excluding the table of contents and table of authorities, is 8,039 as calculated by the MS Word program.

  /s/ BRIAN T. RACILLA
BRIAN T. RACILLA